Per Curiam.

Because on argument it was suggested that a parallel exists between this case and Taylor v. Sise (33 N Y 2d 357), so recently decided, an added comment is merited, in addition to the views expressed by the Appellate Division in this case.
The Taylor case involved separate grants of governmental power. One involved the selection of Justices of the Supreme Court by popular election (N. Y. Const., art. VI, § 6). But that was only part of a variegated constitutional arrangement for judicial selection providing in some instances for selection by appointment and in others by popular election. Another grant involved the selection of Judges for the Court of Claims by appointment of the Governor with the advice and consent of the Senate, and the power in the Legislature to increase the number of Judges in that court {id., art. VI, § 9). The Constitution does not reflect a commitment, therefore, to any single mode for the selection of Judges. Still another grant of power to the Appellate Divisions concerned the unqualified transfer of Judges from certain courts to other courts as the business of the courts might require {id., art. VT, § 26).
These several powers collectively did. not reflect a single overriding purpose or plan. Thus, this court, in the Taylor case, concluded that these powers were not qualified or limited by the diverse historical purposes which had stimulated their creation, and that they did not represent a unified, intermeshing plan of the different methods for the selection of Judges.
The constitutional provisions involved in the present case, on the other hand, do involve a unified and interdependent plan to control the taxing and debt-contracting power of the subdivisions of the State. A disregard of this overall purpose by accepting specious devices to evade them would nullify their effect. Most important, the overall purpose is evident from within the four corners of the Constitution as well as the constitutional history which brought' them into being. The plan made express in the Constitution, and sustained by the historical antecedents reflecting purpose, must therefore be treated as a limitation of the exercise of the powers, to the extent, and perhaps only to the extent, that measures to evade are palpably in violation of the plan and purpose. That is the situation in this case.
To the extent that the rationales expressed in Cherey v. City of Long Beach (282 N. Y. 382) and Bugeja v. City of New York *630 (24 A D 2d 151, affd. 17 N Y 2d 606) may appear broader than that upon which this holding rests, they should be considered limited.
As for the element for futurity suggested in the dissenting opinion, to be sure such an element is present in a retirement system or in any funded pension plan. The point is that no retirement or pension plan is ■ actuarially sound unless the annual amortization reflects the current burden in disbursements and in reserves for future payments. The current burden is satisfied or exhausted whichever way one would analytically phrase it by the annual payment. A contrary view which is perhaps verbally appealing is economically and actuarially unsound. Otherwise, the theory of annual leveling payments would hardly be justified, because a current tax-paying generation should not bear a burden other than one that is appropriate to it, or shift to future generations a burden not appropriate to them. Indeed, the tax and debt-contracting limitations of the Constitution for the State and its subdivisions have, that very purpose.
Accordingly, the order should be affirmed on the opinion of Mr. Justice Reid S. Moule at the Appellate Division, with costs to respondents.