BETHLEHEM STEEL CORPORATION, Respondent, v BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF LACKAWANNA et al., Appellants; LOUIS J. LEFKOWITZ, as Attorney-General of the State of New York, Intervenor.

JEAN W. JONES et al., Respondents, v CITY SCHOOL DISTRICT OF THE CITY OF GENEVA, Appellant; LOUIS J. LEFKOWITZ, as Attorney-General of the State of New York, Intervenor.

JEANNETTE C. WALDERT, Respondent, v CITY OF ROCHESTER, Appellant; THOMAS R. FREY, Intervenor-Appellant; LOUIS J. LEFKOWITZ, as Attorney-General of the State of New York, Intervenor.

Fourth Department, January 20, 1978

## APPEARANCES OF COUNSEL

*Peter A. Vinolus (John J. Olszewski* of counsel), for Board of Education of City School District of Lackawanna and others, appellants.

*David K. Floyd* for Bethlehem Steel Corporation, respondent.

*Louis J. Lefkowitz, Attorney-General (Jean Coon* and *Ruth Kessler Toch* of counsel), for intervenor.

*Albert E. Bond* for City School District of the City of Geneva, appellant.

*Van Voorhis & Van Voorhis (John Van Voorhis* of counsel), for Jean W. Jones and others, respondents.

*Harry Treinin* for City School District of City of Corning, *amicus curiae.*

*Louis N. Kash, Corporation Counsel,* for City of Rochester, appellant.

*Lamb, Webster, Walz, Donovan & Sullivan (Louis N. Kash* and *Herman J. Walz* of counsel), for intervenor-appellant.

*Leslie G. Foschio Corporation Counsel (Stanley Moskal* of counsel), for City of Buffalo, *amicus curiae.*

## OPINION OF THE COURT

HANCOCK. JR., J.

The central question on these appeals is the constitutional validity in the light of *Hurd v City of Buffalo* (34 NY2d 628, affg 41 AD2d 402 on opn of MOULE, J.) of the latest effort[1] by the Legislature (L 1976, ch 349, amd by L 1976, ch 485)[2] to alleviate the continuing financial problems of the Cities of Buffalo and Rochester and of certain school districts. In the *Hurd* decision, the Court of Appeals invalidated a legislative attempt to solve Buffalo's budgetary crisis through the device of adding paragraph 42-a to subdivision a of section 11.00 of the Local Finance Law to assign a period of probable useful- ness of three years to amounts paid for pension and Social Security benefits (L 1969, ch 1105). The intended effect of paragraph 42-a (§ 11.00, subd a) was the exclusion of the taxes to defray the cost of pension and Social Security benefits from the constitutional provision pertaining to the City of Buffalo limiting the amount of taxes to be raised from real estate to 2% of the five-year average full value (NY Const, art VIII, § 10, subd [b]; § 11, subd [b]). In holding paragraph 42-a (§ 11.00, subd a) unconstitutional, the court found that the statute was a measure to evade and "palpably in violation" of the "unified and interdependent [constitutional] plan to con- trol the taxing and debt-contracting power of the subdivisions of the State" established by the New York Constitution (art

---

1. Since the *Hurd* decision in March 27, 1974, the Legislature has enacted chapters 496 and 497 of the Laws of 1974 (providing a period of probable usefulness for pensions and Social Security costs on a temporary emergency basis, limited to the fiscal year 1974-1975) and chapters 322 to 325 of the Laws of 1975 (extending through the fiscal year 1975-1976 the effect of chapters 496 and 497 of the Laws of 1974).

2. The State Real Property Tax Act (L 1976, ch 349, § 3) was amended by chapter 485 of the Laws of 1976 with respect to matters not here in question. Henceforth, reference to the amendment (L 1976, ch 485) will be omitted.

VIII, § 10, subd [b]; § 11, subd [b]). *(Hurd v City of Buffalo,* 34 NY2d 628, 629, *supra.)*

The legislation in question here (L 1976, ch 349)—like paragraph 42-a of subdivision a of section 11.00 of the Local Finance Law—is designed to empower the municipalities and school districts to raise revenue through real property taxes free of the applicable constitutional tax limitations. This enactment, containing two separate statutes known as the Emergency City and School District Relief act (hereinafter cited as Emergency Relief Act) (L 1976, ch 349, § 2) and the State Real Property Tax Act (L 1976, ch 349, § 3), was concededly prompted by the refusal of the voters in November, 1975 to approve an amendment to article VIII (§ 11, subd [b]) of the Constitution of New York which would have modified or repealed the tax limitation and freed the municipalities from their financial predicament (see Legislative Findings, L 1976, ch 349, § 1). Further, from the Legislative Findings (L 1976, ch 349, § 1) it is evident that the legislation is designed to accomplish its purpose of skirting the constitutional limits in section 10 of article VIII in a way that will conform to the *Hurd* decision.[3]

■ The Emergency Relief Act (L 1976, ch 349, § 2) establishes a period of probable usefulness of three years for the costs of retirement and Social Security for the Cities of Buffalo and Rochester and for any school district which is coterminous with, or partly within or wholly within, a city having less than 125,000 inhabitants according to the latest Federal census. Read in conjunction with subdivision (b) of section 11 of article VIII of the New York Constitution, this act permits the Cities of Buffalo and Rochester and some school districts to exclude the amounts appropriated for retirement and Social Security costs in the computation of the total amount of revenue that may be raised by the real property tax levy under the limitations established by the New York State Constitution (art VIII, § 10).

■ The State Real Property Tax Act (L 1976, ch 349, § 3) is to become effective in the event that the Emergency Relief Act is declared unconstitutional by the Court of Appeals. It applies to cities having a population of 125,000 or more

---

3. For example, section 1 of the Legislative Findings (L 1976, ch 349) states in part, "It is the purpose of section two of this act to afford such cities and school districts temporary relief * * * while preventing any increase of non-conformity with the determination in the case of *Hurd v City of Buffalo"*. (See n 7, *infra.)*

inhabitants but less than 1,000,000 and to any school district which is coterminous with, or wholly or partly contained within, a city having a population of less than 125,000 inhabitants. The governing body of any such city or school district may request the State Comptroller to make State aid payments to the municipality in an amount not to exceed a maximum amount set forth for each municipality in the statute (State Real Property Tax Act, § 4; L 1976, ch 349, § 3). These maximum amounts are equivalent to the amounts which the municipalities would have been able to exclude from the tax limitation under the Emergency Relief Act (e.g., Rochester—$32,000,000; Buffalo—$39,000,000). The State is empowered to levy a State real estate tax on the recipient municipality in the same total amount as the State aid granted, to be collected by the municipality in the same manner and at the same time as city and school district real property taxes. The act, if it becomes effective, will expire on June 30, 1980.

In the two above-entitled declaratory judgment actions (Waldert v City of Rochester, and Jones v City School Dist. of City of Geneva), in which taxpayers have sought to recover alleged illegal overpayments from their taxing districts, Special Term has declared chapter 349 of the Laws of 1976 to be unconstitutional and has granted summary judgment for the amounts of the overpayments.

In Bethlehem Steel Corp. v Board of Educ., an article 78 proceeding brought by petitioner as a taxpayer against the City School District of Lackawanna, Special Term has also held chapter 349 of the Laws of 1976 unconstitutional. In addition, the court invalidated chapter 484 of the Laws of 1976[4] pursuant to which the costs of health and dental insurance were excluded from the tax limit.[5] Special Term deter-

---

4. State Aid for School Districts Act (L 1976, ch 484) amends, by extending to 1979 the expiration date of, chapter 587 of the Laws of 1973, which, *inter alia,* assigns a period of probable usefulness to the employer's share of the cost of current health and dental insurance coverage, resulting in the exclusion of those amounts from computation of the tax limits for operating purposes set forth in section 10 of article VIII of the New York State Constitution. This act applies to any school district which is coterminous with, or partly within or wholly within, a city having less than 125,000 inhabitants.

5. Petitioner Bethlehem Steel Corp. also questioned the school board's appropriation for the capital reserve fund of approximately $25,000. Special Term did not reach a determination on the issue, and the item remains in the budget. Inasmuch as the question was not briefed on appeal, we do not rule on it.

mined the appropriations for pension expense in the amount of $1,712,000 and health insurance in the amount of $343,000 to be illegal and directed respondents to adopt and publish a revised final budget to eliminate said amounts from the computation of the constitutional tax limitation. Further, Special Term enjoined respondents from mailing any tax statement to the taxpayers until the budget had been so revised. Respondents appealed, and, relying on the automatic stay provisions in CPLR 5519 (subd [a], par 1), proceeded to mail out tax statements based on the original budget. These mailings were again temporarily enjoined by an order to show cause, but the automatic stay is now in effect by order of this court. On the argument it was agreed that the balance of the statements had been mailed.

For the reasons hereinafter stated, we affirm the judgments in Waldert v City of Rochester, and Jones v City School District insofar as they declare chapter 349 of the Laws of 1976 unconstitutional, but modify the judgments to delete the provision directing repayments. The judgment in Bethlehem Steel Corp. v Board of Educ. is affirmed insofar as it declares chapters 349 and 484 to be unconstitutional and determines that the amounts appropriated for pension expense and health insurance were improperly excluded from the tax limit. The relief granted to petitioner is modified as hereinafter set forth.

In addition to contending that the operative statutes (L 1976, chs 349, 484) are constitutional, in which the Attorney-General has joined in oral argument and by filing a brief,[6] appellants raise certain other issues which will be discussed, including the propriety of the directed repayments in the Jones and Waldert cases, and the propriety of the direction in Bethlehem Steel Corp. v Board of Educ. that respondent revise its budget to exclude the appropriations for pension, Social Security, and health insurance expenses. Further, the defendant-appellant, City of Rochester, and the intervenor-defendant, Thomas R. Frey, argue that section 10 of article VIII of the New York Constitution is unconstitutional under the equal protection and due process clauses of the United States Constitution, but that if section 10 of article VIII should be held to be constitutional then the 2% tax limit for "city purposes"

---

6. In Jones v City School District of the City of Geneva, the City School Districts of Corning, New York, and Binghamton, New York, were permitted to file briefs *amici curiae*. An *amicus* brief was also received from the City of Buffalo in Waldert v City of Rochester.

contained in that section should be construed as excluding sums appropriated for educational purposes.

## I

### THE CONSTITUTIONALITY OF THE EMERGENCY RELIEF ACT (L 1976, CH 349, § 2)

It is conceded in the Legislative Findings (L 1976, ch 349, § 1)[7] that the Emergency Relief Act was tailored so as to avoid the impact of *Hurd v City of Buffalo (supra)*. Appellants contend that the Legislature has in the Emergency Relief Act remedied those aspects of paragraph 42-a (Local Finance Law, § 11.00,subd a) which were found constitutionally deficient in *Hurd*.

First, appellants argue that the statute was passed only as a temporary measure limited to the fiscal year commencing on July 1, 1976 and the three succeeding fiscal years pending the "comprehensive revision of article eight of the constitution" to be undertaken at the constitutional convention which the legislators presumably assumed would be approved by the voters at the general election in 1977 (Legislative Findings, L 1976, ch 349, § 1). The court in *Hurd,* on the other hand, appellants point out, was faced with paragraph 42-a (§ 11.00, subd a) which provided an on-going grant of authority for the exclusion of retirement and pension contributions from the constitutional tax limit. We fail to see how the temporary nature of the enactment makes it any less a measure to evade section 10 of article VIII of the New York Constitution which is "palpably in violation of the plan and purpose" of the "unified and interdependent plan to control the taxing and debt-contracting power of the subdivisions of the State" condemned by the court in *Hurd* (34 NY2d 628, at p 629).

---

7. The Legislative Findings state in part: "Although the legislature in the past attempted to alleviate the situation by allowing such cities and school districts to exclude the cost of annual pension and social security contributions from computation of tax limitations, the case of *Hurd v City of Buffalo* * * * held such attempt * * * to be unconstitutional. As a result of such decision, the legislature in nineteen hundred seventy-four and nineteen hundred seventy-five enacted legislation which authorized the exclusion of such costs on an emergency basis * * * It is the purpose of section two of this act [viz., Emergency Relief Act] to afford such cities and school districts temporary relief by permitting them to exclude from constitutional tax limitations certain pension and social security contributions until nineteen hundred eighty, while preventing any increase of non-conformity with the determination in the case of *Hurd v City of Buffalo* for the fiscal years of such cities and school districts beginning July first, nineteen hundred seventy-seven." (L 1976, ch 349, § 1.)

Furthermore, the soundness of the premise on which appellant's argument is based—that the statute is but a temporary solution pending the amendment or elimination of the constitutional tax limit—must be seriously questioned in view of the defeat in the election of 1977 of the proposed constitutional convention (at which the amendment of article VIII was to be effected) and the prior defeat of the proposed amendment itself in the election of 1975.

■ Next, appellants assert that the Emergency Relief Act has a greater futurity component than paragraph 42-a (§ 11.00, subd a) because the Emergency Relief Act limits the amount of appropriations for pension and Social Security benefits that may be excluded from the tax limit in the second, third and fourth fiscal years to the amount excluded in the first year. Under paragraph 42-a (Local Finance Law, § 11.00, subd a), on the other hand, all of the amounts for pensions and Social Security could be excluded. Thus, appellants claim that there is greater reason for finding a rational basis in the legislative determination that pension and Social Security benefits have a period of probable usefulness of three years in the Emergency Relief Act than in paragraph 42-a (Local Finance Law, § 11.00, subd a). We disagree.

The arbitrary and inflexible ceiling placed on the amounts of excludable retirement and Social Security appropriations in the second, third and fourth fiscal years clearly can bear no logical relationship to the portions of such appropriations in those years that could be considered allocable to a reserve for payments to future retirees. Nor can the limitation placed on the exclusions in the second, third and fourth years obviate the constitutional infirmity of the provision with respect to the first fiscal year in which the amounts appropriated for pensions and Social Security may be excluded without limitation. As the *Hurd* court explained, those amounts excluded in the first fiscal year must necessarily include the current payments to pensioners, since "no retirement or pension plan is actuarially sound unless the annual amortization reflects the current burden in disbursements" as well as in reserves for future payments *(Hurd v City of Buffalo,* 34 NY2d 628, 630, *supra).* Indeed, the drafters of the Emergency Relief Act seem to concede the constitutional vulnerability of the legislation with respect to the first fiscal year, for they explain the purpose of the limitations on the exclusions in subsequent years as the prevention of "any *increase* of non-conformity

with the determination in the case of *Hurd v City of Buffalo.*" (Legislative Findings, L 1976, ch 349, § 1; emphasis added.)

■ Finally, it is urged that the statute provides for a "temporary emergency solution to the problem currently being encountered by the above listed cities and school districts in order to avoid fiscal and social chaos" (Legislative Findings, L 1976, ch 349, § 1) and that this distinguishing feature saves it from the impact of *Hurd.* Again we must disagree. The fiscal and social problems of the cities and school districts, although admittedly serious in the extreme, do not possess the characteristics of "periods of emergency caused by enemy attack ·or by disasters (natural or otherwise)" which would, pursuant to the New York Constitution (art III, § 25), warrant suspension of constitutional restrictions on State action under the State police power. In discussing the proper exercise of State police power, the Court of Appeals has stated: "Emergency laws in time of peace are uncommon but not unknown. Wholesale disaster, financial panic, the aftermath of war [citation omitted], earthquake, pestilence, famine and fire * * * may, as the alternative of confusion or chaos, demand the enactment of laws that would be thought arbitrary under normal conditions." *(People ex rel. Durham Realty Corp. v La Fetra,* 230 NY 429, 444-445, dsmd *sub nom. People ex rel. Brixton Operating Corp. v La Fetra,* 257 US 665, quoted in *Matter of New York Edison Co. v Maltbie,* 244 App Div 436, 442.)

The financial problems facing the cities and school districts have not emerged suddenly. Nor can it be said that they are of a temporary nature. We take judicial notice that the severe budgetary squeeze in which the cities and school districts are now caught has existed for several years and that cries of emergency anf financial crisis have accompanied the several remedial enactments since *Hurd,* including the proposed amendment to section 10 of article VIII of the New York State Constitution. (See, e.g., L 1974, chs 496, 497, which provided for temporary emergency relief limited to the fiscal year 1974-1975 [discussed in *Hurd v City of Buffalo,* Sup Ct, Erie County, March 10, 1975, and *Sullivan v Board of Educ. of City School Dist. of Long Beach,* Sup Ct, Nassau County, Oct. 23, 1975]; and L 1975, chs 322-325, which extended said temporary emergency provisions through the fiscal year 1975-1976.) Thus, without questioning the reality or severity of the financial predicament facing respondents, one must conclude

that the problem is not of recent origin and that, in view of the defeat of the proposed constitutional amendment in 1975 and the proposed constitutional convention in 1977, it appears to be anything but temporary.

Furthermore, it is far from clear that the very emergency argument being made here was not urged before the Court of Appeals in *Hurd v City of Buffalo (supra)*. While paragraph 42-a (§ 11.00, subd a) (L 1969, ch 1105) contained no language denoting the existence of an emergency, it is observed that in the brief submitted to the Court of Appeals by the City of Rochester in *Hurd* it was argued that if "section 11.00 (a) [par 42-a] of the Local Finance Law is declared unconstitutional for whatever grounds, the City of Rochester would be placed in a *disastrous financial situation.*" (Emphasis added.) This argument was answered in a separate reply brief.

*Cherey v City of Long Beach* (282 NY 382) and *Bugeja v City of New York* (24 AD2d 151, affd 17 NY2d 606) lend no more assistance to the Emergency Relief Act than they did to paragraph 42-a (§ 11.00, subd a). No matter how it is characterized, this statute is the very sort of measure "to evade * * * palpably in violation of the plan and purpose" of section 10 of article VIII of the New York Constitution struck down in *Hurd v City of Buffalo* (34 NY2d 628, 629, *supra*). To the extent that *Cherey* and *Bugeja* may be read to hold otherwise, they must be considered to have been overrruled or modified by *Hurd.*

## II

### THE CONSTITUTIONALITY OF THE STATE REAL PROPERTY TAX ACT (L 1976, CH 349, § 3)

■ Having determined that the Emergency City and School District Relief Act is a "device to evade * * * [the] unified and interdependent plan to control the taxing and debt-contracting power of the subdivisions of the State" contrary to *Hurd,* it would be difficult indeed for us to reach a different conclusion with respect to its companion "stand-by" statute, the State Real Property Tax Act (L 1976, ch 349, § 3). For the purpose and aims of sections 2 and 3 are exactly the same: "financing the operations of cities and certain school districts" (Heading, L 1976, ch 349) and providing a "temporary emergency solution to the problem currently being encountered by the * * *

cities and school districts in order to avoid fiscal and social chaos." (Legislative Findings, L 1976, ch 349, § 1.)

■ That the State Real Property Tax Act is labeled a State tax and that the tax is to be collected by the State and remitted to the cities and school districts through the device of State aid do not, as appellants contend, make it a State tax and, therefore, exempt from section 10 of article VIII of the New York State Constitution. For it has the same purpose, has the same effect, and serves the same cities and school districts as the Emergency Relief Act—concededly a measure designed to permit *local taxes.* In effect, it can be said that the State Real Property Tax Act is the Emergency Relief Act but operating under a different name and in a different way. The only difference between the two acts is the way in which they seek to circumvent section 10 of article VIII of the Constitution: the Emergency Relief Act does it through the device of giving a period of probable usefulness to pension and Social Security costs; the State Real Property Tax Act does it by making a State tax out of a local tax.

One can imagine that the implementation of this act, which appears structurally to be so complex, could in actuality require nothing more than a few bookkeeping entries. A credit for the amount of State aid approved for each participating district (which, as pointed out, would be equal to the amount of additional tax that the district would have received if the Emergency Relief Act had permitted the exclusion of pension and Social Security costs from the tax limit) could be entered on the State's books. The State, then, would be entitled to recoup an amount equal to that credit from the district through the State Real Property Tax Act. The district, operating as the State's tax collecting agency (L 1976, ch 349, § 3; State Real Property Tax Act, § 6) would proceed to collect the tax which would then be carried as an off-setting credit to the State on the district's books. The two matching credits—the amount of State aid carried on the State's books for the account of the district and the amount of the tax collected by the district as agent for the account of the State—would be canceled and the district would keep the tax. There would be no need for the actual transmittal of funds. The net result would be that the district would have levied, collected, and kept the same tax from the same taxpayers in the same amount as it would have under the Emergency Relief Act. Thus, the Legislature's intended scenario, in which the local

tax must always appear in the guise of a State tax, may be acted out simply by running the tax through the State's books.

The reasoning of the Court of Appeals in *People v Westchester County Nat. Bank* (231 NY 465) seems pertinent. In determining that a statute, which provided for the issuance of bonds with the express provision that the proceeds should be given as a bonus to residents of New York who served in World War I, authorized a gift of the State's credit prohibited by the New York Constitution, the court looked beyond the form of the proposed transaction to its substance and effect, stating (p 476): "[D]oes this act contemplate a gift of the state's credit? In answering this question the mere form of the transaction is immaterial. If the gift of the bonds of the state to a railroad corporation would be such a gift—and it undoubtedly would be—then so would be an issue of bonds by the state with the express condition that their proceeds should be given to the same corporation. The evasion of the constitutional prohibition would be palpable and it could not and should not be permitted."

Moreover, as respondents have pointed out, because of its lack of uniformity of application the State Real Property Tax Act could not be considered to be a State tax without being in violation of the equal protection and due process clauses of the Fourteenth Amendment of the United States Constitution and sections 6 and 11 of article I of the New York Constitution. (See *Township of Pine Grove v Talcott,* 19 Wall [86 US] 666, 675.)

Appellants' reliance on *Wein v City of New York* (36 NY2d 610) is misplaced. In *Wein* the court found the New York City Stablization Reserve Corporation Act constitutional against contentions that it permitted the city to borrow in excess of the constitutional debt limit and violated article VIII and article X of the New York State Constitution. The court held (p 619) that "the statutory scheme stays within the letter of the Constitution * * * and carefully so." With the State Real Property Tax Act, on the other hand, as with paragraph 42-a (§ 11.00, subd a) (involved in *Hurd v City of Buffalo,* 34 NY2d 628, 629, *supra),* we have statutes that are "palpably in violation of the plan and purpose" of the Constitution of New York. Indeed, the court in *Wein* noted the distinction, stating (p 618), "In *Hurd,* the letter of the Constitution was being

'twisted.' Here, it is being scrupulously observed in that the city incurs no obligation now or in the future."

■ ■ We find no merit to the contentions made by the appellant City of Rochester that respondent Waldert's challenge to the State Real Property Tax Act is prospective and that he presents no justiciable controversy with respect to it. As distinguished from the proposal that was to be submitted to the voters in a referendum in 1977 general election considered in *New York Public Interest Research Group v Carey* (42 NY2d 527), we are dealing here with a statute that is now an effective law of the State. The cities and school districts are permitted to take steps to implement it and have taxes levied under it, if and when the Court of Appeals declares the companion act, the Emergency Relief Act, unconstitutional. As is obvious from this opinion, it is our opinion that the Court of Appeals, based on its *Hurd* decision, will do so and that the question of the constitutionality of the State Real Property Tax Act will be of immediate concern. Under these circumstances, "[t]he fact that the court may be required to determine the rights of the parties upon the happening of a future event does not mean that the declaratory judgment will be merely advisory. In the typical case where the future event is an act contemplated by one of the parties, it is assumed that the parties will act in accordance with the law and thus the court's determination will have the immediate and practical effect of influencing their conduct (Borchard, Declaratory Judgments, pp 25-28, 75-76)." *(New York Public Interest Research Group v Carey, supra,* pp 530-531.)

In any event the defense of lack of standing to sue because of prematurity and the absence of justiciable controversy has not been raised by the other appellants.

### III

#### CHAPTER 484 OF THE LAWS OF 1976

■ Chapter 484 of the Laws of 1976, *inter alia,* assigns to the cost of current health and dental insurance coverage a period of probable usefulness of three years. Pursuant to this statute and article VIII (§ 11, subd [b]) of the New York State Constitution, the respondent-appellants in Bethlehem Steel Corp. v Board of Educ. have excluded $343,000 of the amounts budgeted for hospital, medical, and dental insurance from the maximum amount of the tax levy permitted by section 10 of

article VIII of the New York State Constitution. For the reasons set forth above (see Point I), we hold chapter 484 unconstitutional. *(Hurd v City of Buffalo,* 34 NY2d 628, *supra.)* We add only that if there is any element of futurity in health insurance expenses, it is less discernible than that which may be present in payments for pensions and Social Security.

IV

THE CONSTRUCTION OF SECTION 10 OF ARTICLE VIII OF THE
NEW YORK STATE CONSTITUTION

The argument of appellant City of Rochester that the 2% tax limit for "city purposes" imposed by article VIII (§ 10, subd [b]) of the New York Constitution should be construed as excluding sums appropriated for educational purposes has been answered in *Board of Educ. v Van Zandt* (119 Misc 124, 126, affd 204 App Div 856, affd 234 NY 644). The words of Justice RODENBECK at Special Term are still apt: "[I]t has been assumed for nearly four decades * * * that 'city purposes' as used in the section includes all taxes which the city may legally impose. Although this section was amended by the new Constitution of 1894 and again in 1899, 1905, 1908 and 1917, the first and last sentences containing the words 'city purposes' remained unaltered. If there had been any misunderstanding of the meaning of those terms or any contradiction, some amendment would have been proposed."

None of the amendments to section 10 of article VIII that have taken place since Justice RODENBECK's decision in 1922 has altered the phrase "for city purposes" or evinced any intention of modifying or repealing the construction that has consistently been given to the section by the practice of local and State officials over the course of almost 100 years of including education expenses with other city expenses in the computation of the 2% limit for cities of the size of Rochester. It must be assumed that the drafters of these amendments to section 10 of article VIII were aware of the phrase "for city purposes" and the way it had been and was being interpreted, and that, if they had intended to change the effect of the section, they would have made the appropriate amendment.

Furthermore, consideration must be given to the practical construction that has been placed on the section (McKinney's Cons Laws of NY, Book 1, Statutes, § 127); and the long-continued course of action by administrative or executive

officers charged with administering the provision is, under the circumstances, entitled to great weight. (McKinney's Cons Laws of NY, Book 1, Statutes, § 129, subd a.)

## V

### THE VALIDITY OF SECTION 10 OF ARTICLE VIII OF THE NEW YORK CONSTITUTION UNDER THE UNITED STATES CONSTITUTION

■ The City of Rochester's argument that section 10 of article VIII is in violation of the equal protection clause of the Fourteenth Amendment of the United States Constitution because its tax limitations are founded on unlawful and suspect classifications is without merit. The classifications based on the size and nature of the municipalities and school districts set forth in section 10 cannot be said to be of the "suspect" type such as those involving race, national origin, religion, or sex where the burden is cast upon the party relying on the provision to justify its constitutionality. (See *Califano v Goldbarb,* 430 US 199; *Craig v Boren,* 429 US 190; *Weinberger v Wiesenfeld,* 420 US 636; *Frontiero v Richardson,* 411 US 677; *Reed v Reed,* 404 US 71.)

We cannot say that such classifications, under which the counties, cities, villages, school districts, and the State have operated and on which they and the taxpayers have relied for almost 100 years, are irrational or without a reasonable basis in fact. As stated in *Magoun v Illinois Trust & Sav. Bank* (170 US 283, 296): "There is therefore no precise application of the rule of reasonableness of classification, and the rule of equality permits many practical inequalities. And necessarily so. In a classification for governmental purposes there cannot be an exact exclusion or inclusion of persons and things."

In view of the strong presumption of constitutionality that must attach to section 10 of article VIII, under these circumstances, we hold that the provision is constitutional and reject appellant's argument that there are questions of fact presented in the record which require a hearing on the issue.

## VI

### THE DIRECTED REFUNDS IN WALDERT AND JONES

■ We see no reason for departing from the rule stated in *Hurd v City of Buffalo* (34 NY2d 628, affg 41 AD2d 402 on opn

of MOULE, J., *supra),* and accordingly hold that it was error to direct the repayments of portions of taxes paid by plaintiffs under the 1976-1977 tax levies in Waldert v City of Rochester and Jones v City School District of Geneva. (See *Pellnat v City of Buffalo,* 87 Misc 2d 742, revg 80 Misc 2d 849, affd 59 AD2d 1038.) As stated by Justice MOULE in his opinion in *Hurd* (41 AD2d, at pp 405-406):

"Although we find the statute unconstitutional, the fact is that the city has relied on the additional taxes which it was able to impose because of the statute, and has spent the revenues derived thereby. In *Lemon v. Kurtzman* (411 U. S. 192, 199, 207), the Supreme Court affirmed a District Court decision (348 F. Supp 300) permitting the State of Pennsylvania to make payments to nonpublic sectarian schools for services rendered prior to the date the law providing for such services and payments was found unconstitutional. * * *

"Precisely the same considerations are present in this case. The city administration relied upon the statute in preparing its budget and to mandate repayment of amounts illegally collected in the past would place an impossible burden upon it and, in any event, it would be liable only for those taxes paid under protest."

That the Legislature since the *Hurd* decision of this court in 1973 has annually passed statutes designed to obviate the effect of *Hurd,* does not make the rationale of Justice MOULE's opinion any less applicable. The point is that when they levied the taxes in July, 1976, the school districts did so in reliance on chapter 349 of the Laws of 1976 which had been duly enacted as the law of this State and was not under challenge. Furthermore, when they did so, one of the previous legislative efforts to obviate the *Hurd* ruling had been held constitutional in two decisions *(Hurd v City of Buffalo,* Sup Ct, Erie County, March 10, 1975, and *Sullivan v Board of Educ. of City School Dist. of Long Beach,* Sup Ct, Nassau County, Oct. 23, 1975).

## VII

### THE RELIEF IN BETHLEHEM STEEL CORP. V BOARD OF EDUCATION

We hold that Special Term improperly directed the Board of Education of the Lackawanna City School District to revise its final budget so as to reflect the court's holding that pension, Social Security, and health insurance expenses should not

have been excluded in computing the amount of maximum tax levy as limited by section 10 of article VIII of the New York Constitution.

The basis for petitioner's proceeding and for the relief it seeks is the illegal tax—illegal because it is in excess of the limit imposed by section 10 of article VIII of the Constitution. It is aggrieved because it has paid or is being compelled to pay a tax which it claims is unconstitutional. Its remedies include paying the tax under protest and suing to get it back or, if it chooses, refusing to pay the portion of the tax which it deems illegal at the risk of paying penalties if the tax should subsequently be held valid.

There is nothing before us to show that the Lackawanna school board has not duly adopted and published the final budget in accordance with the Education Law after preparing a tentative budget and conducting a public hearing. (Education Law, §§ 2516-2519.) Nor is there any suggestion that the board has acted arbitrarily or capriciously or exercised anything but good faith in adopting the budget and including in it those items that it deemed necessary for the operation of the school system (Education Law, §§ 2503, 2516) and doing so in reliance on chapter 349 of the Laws of 1976. Petitioner does not contend that any item in the budget is unnecessary, illegal, or improper. Its concern is with the excessive tax which we hold to be illegal and for which it may pursue the appropriate remedy, not with the discretionary actions of the school board in performing its statutory functions over which the court has no authority. (See *Matter of Gimprich v Board of Educ.,* 306 NY 401; *Matter of Gorfinkel v Allen,* 58 Misc 2d 43.)

Petitioner has requested alternate relief—viz., that the court declare that "*if it appropriately protests* the payment of any tax billed to it" (emphasis added), it shall be entitled to a refund. It does not appear in the record whether petitioner-appellant has paid under protest any or all of its tax bill. We note that the attorney for the school board in his affidavit in opposition to appellant's motion for an injunction has stated:

"The taxpayer-petitioner has the legal right to pay these tax bills 'UNDER PROTEST' and will be legally protected.

"That, if in the future it is the final decision of the Appeals Court that the statutes in question are unconstitutional, then the taxpayer-petitioner does have a remedy for repayment of

such alleged unlawful or illegal tax payments by legal application for a tax refund."

Because the facts concerning payment under protest are not now before us and because the school board is apparently willing to make a refund if and when the Court of Appeals should decide that chapter 349 of the Laws of 1976 is unconstitutional, it would be premature and could be unnecessary for us to give what would amount to an advisory opinion. (See *New York Public Interest Research Group v Carey,* 42 NY2d 527, *supra.)* The matter would be better resolved, if it is not eventually resolved by agreement, in a lawsuit for a refund in which all the facts will be before the court.

The judgments below should be modified, on the law, in accordance with this opinion and otherwise affirmed.

MOULE, J. P., CARDAMONE, SIMONS and DENMAN, JJ., concur.

Judgments unanimously modified, on the law, in accordance with opinion by HANCOCK, JR., J., and, as modified affirmed, without costs.