CENTRAL BUFFALO PROJECT CORPORATION, Appellant-Respondent, v CITY OF BUFFALO, Respondent-Appellant, et al., Defendants. (Appeal No. 1.)

CENTRAL BUFFALO PROJECT CORPORATION, Appellant, v CITY OF BUFFALO, Respondent, et al., Defendants. (Appeal No. 2.)

Fourth Department, May 23, 1980

### APPEARANCES OF COUNSEL

*Falk, Siemer, Glick, Tuppen & Maloney (Edwin H. Wolf,* of counsel), for appellant-respondent.

*Joseph P. McNamara, Corporation Counsel (Stanley A. Moskal, Jr.,* of counsel), for respondent-appellant.

### OPINION OF THE COURT

CARDAMONE, J. P.

We consider once again the issue of refunds due a taxpayer

for taxes illegally collected by a municipality in excess of its constitutional limits. This appeal is taken by plaintiff Central Buffalo Project Corporation, whose motions for summary judgment in each of five actions for refunds of alleged overpayment of city taxes to the City of Buffalo were denied. The basis for denial was (in the cases for the years 1974-1975 and 1975-1976) that the taxes have not been shown to have been collected illegally inasmuch as the statute which authorized collection of these taxes had not been explicitly declared unconstitutional. With respect to the tax years 1976-1977 and 1977-1978 Special Term's denial of summary judgment was based on its finding that the city had raised a triable issue of fact as to what amount of taxes it was constitutionally permitted to collect. Appellant has accepted the determination denying its motion for summary judgment for the 1973-1974 taxes and that decision is not part of this appeal.

In *Waldert v City of Rochester, Jones v City School Dist. of City of Geneva* and *Bethlehem Steel Corp. v Board of Educ.* (decided together, 61 AD2d 147) this court affirmed judgments of Special Term that chapters 349 and 484 of the Laws of 1976 were unconstitutional. Those enactments, assigning a period of probable usefulness to current payments for retirement and Social Security contributions and to the cost of current health and dental insurance coverage, were found to be palpable evasions of the constitutional restrictions on local taxation and were struck down on the authority of *Hurd v City of Buffalo* (34 NY2d 628). The local subdivisions were not, however, ordered to refund the taxes they had collected in excess of the tax limitation, because we determined that they had justifiably relied on the presumption of the constitutionality of duly enacted laws of the State. These orders were modified in the Court of Appeals which noted that in 1974 local taxing authorities had been put on notice by *Hurd v City of Buffalo* that patent circumvention of constitutional limitations on their taxing powers would not be tolerated *(Bethlehem Steel Corp. v Board of Educ., supra,* affd 44 NY2d 831).

There is no doubt that Central Buffalo is entitled to a refund of excess taxes paid for the four tax years from 1974-1975 to 1977-1978. Although *Waldert and Jones* concerned only the tax years 1976-1977 and 1977-1978, the rationale of those decisions applies with equal force to the two prior tax years *(Angelone v City of Rochester,* 72 AD2d 445). The city's claim that section 10 of article VIII of the New York State

Constitution violates the equal protection of the State and Federal Constitutions and the education article of the State Constitution were raised and rejected in *Waldert v City of Rochester* (61 AD2d 147, 164, *supra).* The city's allegation that the State policy of making refunds only to taxpayers who paid under protest also violates the equal protection clauses of both Constitutions was similarly dismissed in *Angelone v City of Rochester (supra).*

But another argument advanced by the city in opposition to the motions for summary judgment merits some discussion. It requires us to decide the proper evidentiary use of State equalization ratios and whether those ratios, having been promulgated by the SBEA and relied upon by the city, may be impeached by the city in a tax refund proceeding.

The evidentiary use of equalization ratios has a complicated history generally associated with tax certiorari proceedings where a plaintiff must establish the market value of his property and the prevailing assessment ratio in the tax district. Prior to 1970 the State equalization ratio was originally regarded as completely inadmissible *(People ex rel. Yaras v Kinnaw,* 303 NY 224). Later the ratios were held to be admissible, although entitled to little weight *(Matter of O'Brien v Assessor of Town of Mamaroneck,* 20 NY2d 587). In 1969 the Legislature amended the Real Property Tax Law to allow use of the State ratio as a shortcut to proving the prevailing assessment ratio (L 1969, ch 302, amdg Real Property Tax Law, § 720, subd 3). In 1974 the Court of Appeals recognized the ratio's change in status and the improved methodology utilized by the State Board of Equalization and Assessment (SBEA) stating that: "Utilization of the equalization rate which is objectively arrived at, and today which is expertly arrived at, would tend to greatly simplify and narrow the scope of these proceedings" *(Guth Realty v Gingold,* 34 NY2d 440, 450). However, while it found the SBEA ratio presumptively valid, the court did preserve the right of the defendant to challenge its accuracy *(Guth Realty v Gingold, supra,* at p 451).

*Guth* spawned a challenge it never anticipated. In *Matter of 860 Executive Towers v Board of Assessors of County of Nassau* (84 Misc 2d 525, affd 53 AD2d 463, affd 43 NY2d 769), the trial court, accepting *Guth's* admonition that the State ratios are open to impeachment, permitted the Board of Assessors to challenge the SBEA's methodology. On appeal

the Appellate Division, noting that the trial below "consumed many months, cost the petitioners over $400,000 in expenses, fees and disbursements, and resulted in a 14-volume record on appeal plus numerous cartons of exhibits" (53 AD2d, at p 469), concluded that "the invitation to the taxing unit to show inappropriateness is more limited than the language [in *Guth*] might, on its face, suggest" (53 AD2d, at p 470). The Appellate Division, Second Department, held that: "future challenges should be made in the statutorily provided hearings before the SBEA and not in the courts upon a certiorari proceeding." (53 AD2d, at p 474.)

Subsequently the Court of Appeals affirmed on the opinion of the Appellate Division and thereby closed the door to impeachment which *Guth* had temporarily opened *(Matter of 860 Executive Towers v Board of Assessors of County of Nassau,* 43 NY2d 769, *supra).*

In 1979 the Legislature undid much of this result by repealing that portion of section 720 of the Real Property Tax Law which permitted taxpayers to rely on the equalization ratios in certiorari proceedings (L 1979, ch 126). In so doing the Legislature made findings that: "The Legislature * * * finds that the reason such equalization rate is inappropriate and invalid is that the equalization rate established for the roll was never intended to determine property values for taxing purposes, but was intended only to be used in connection with equalizing state aid and to *compute constitutional tax and debt limits"* (emphasis added; L 1979, ch 126, § 1).

This, of course, is not a tax certiorari proceeding but, rather, one to obtain a tax refund on the theory that the city exceeded its constitutional taxing limit, which is the precise thing that the Legislature has concluded the ratio was designed to determine. Therefore, the expertise of the SBEA acknowledged in *Guth* and *860 Executive Tower* should conclusively establish the ratio here.

Regardless of whether the SBEA's figures are in fact accurate, the City of Buffalo should be held to have accepted, as a matter of law, the ratios it used. In our view the city is bound by the reports and ratios which it submitted and should now be estopped from denying the validity of these ratios. Although plaintiff presently seeks to rely upon the annual reports submitted to the Comptroller, and indirectly the equalization ratios reported in them, the initial reliance was the city's. Buffalo relied on the ratios applicable at the time. The

key to estoppel, however, is that if Buffalo had objected to the ratios at the time it could have obtained a hearing before the SBEA and pursued an article 78 proceeding before the courts as provided in the Real Property Tax Law (Real Property Tax Law, §§ 1200-1212). Further, SBEA's ratios are not judicially reviewable by taxpayers and may only be challenged by the taxing district (*Matter of O'Brien v Assessor of Town of Mamaroneck*, 20 NY2d 587, 596; *Guth Realty v Gingold*, 34 NY2d 440, *supra*).

In its answer the city alleged that it did not challenge the ratios within the time required by the Real Property Tax Law because it believed it possessed sufficient taxing power and, therefore, claims it had no incentive to challenge. Such an argument defies common sense. A city always has an incentive to expand its tax base, whether or not it actually taxes to the limit. This is particularly true here where any one ratio continued to have an impact four years into the future.*

The failure to challenge the ratios before the SBEA indicates that the city accepted the figures as accurate. It should not be allowed to assert collaterally in this action that the SBEA's ratios were incorrect when it waived the opportunity to challenge them directly.

There are other practical considerations why summary judgment should have been granted. To find the city has established a question of fact creates a monumental burden of proof requiring plaintiff to prove the full value of all property in *Buffalo during the years 1970-1977*. As the Second Department noted in *860 Executive Tower* such a trial consumes enormous resources from both of the parties and the court without producing an appreciable gain in the accuracy of the ratios established. There is no indication that, under the voluminous evidence required to be submitted, a Trial Judge could arrive at a ratio any more trustworthy than the SBEA's.

The rule laid down in *860 Executive Tower* for tax certiorari proceedings has even more relevance here where taxpayers rely upon the ratios for the precise reason that they were created. Under the circumstances it imposes no undue hardship upon the city to require it to do what the taxpayers cannot do and challenge the ratios directly in an administrative proceeding created for that very purpose. In our view, the

---

* SBEA ratios are re-evaluated annually to determine the five-year average full valuation (L 1978, ch 280) under which the maximum taxing power of a municipality is fixed.

failure to do so estops the city from objecting to the ratios' validity in this proceeding. Having concluded that the City of Buffalo is bound by the ratios upon which it relied insofar as those ratios are used to determine its constitutional taxing power, it follows that the city has failed to raise a triable issue of fact.

Accordingly, the order should be reversed and appellant's motion for summary judgment should be granted.

SIMONS, SCHNEPP, DOERR and WITMER, JJ., concur.

Appeal No. 1.—Order unanimously reversed, with costs to plaintiff, and motion for summary judgment granted.

Appeal No. 2—Appeal unanimously dismissed as moot.