*481 OPINION OF THE COURT
David 0. Boehm, J.
This case deals with yet another fiscal lifeboat capsized in the wake of hurricane Hellerstein (Matter of Hellerstein v Assessor of Town of Islip, 37 NY2d 1) and the fruitless legislative efforts which followed it. The history of Real Property Tax Law article 19 is by now too well known to need retelling, except as it applies here.
After the Legislature, in 1981, enacted a new Real Property Tax Law § 305 permitting fractional assessments at a uniform percentage of value and article 19 permitting a city or town to adopt a dual rate tax structure after first revaluing its real property in compliance with standards imposed by the State Board of Equalization and Assessment and becoming an "approved assessment unit”, the Town of Webster (Town) adopted a resolution on April 12, 1984 authorizing the revaluation of all real property in the Town. Upon the Town’s completion of the revaluation, and upon becoming an approved assessing unit, the Webster Town Board approved on April 22, 1985 (Local Law No. 1) a homestead classification of the real property within the Town and a dual tax rate computed by using the statutory formula.
On June 6, 1985, the Court of Appeals in Foss v City of Rochester (65 NY2d 247) (Foss I) held that article 19 and Local Laws, 1983, No. 6 of City of Rochester, as applied to county taxes, unconstitutional. This rendered the Town’s dual rate classification as applied to nonhomestead properties in that part of the Town within the Webster Central School District unconstitutional as well.
The Webster Central School District (School District) includes portions of four towns: most of the Town of Webster and parts of the Town of Penfield, both of which are in Monroe County, and parts of the Towns of Ontario and Walworth, which are in Wayne County.
In response to Foss I, on June 26, 1985, the Legislature enacted Real Property Tax Law article 19-A, which the Governor signed on August 2, 1985 (L 1985, ch 828). This attempted curative legislation left the Town’s homestead base proportions in place and, pursuant to article 19-A, the School District proceeded, as it was obliged to do by August 15, 1985, to request tax warrants from the four towns. Of the amount budgeted by the School District, $19,432,022 was to come from the real property tax levies in the four towns. The Town *482 responded on August 20, 1985 by issuing its warrant and a certification of its homestead base proportions. On September 4, 1985, the School District mailed out its tax bills. Twenty-six days later article 19-A was declared unconstitutional by Supreme Court, Monroe County (Foss v City of Rochester, Oct. 1, 1985, Conway, J.). This decision was affirmed by the Court of Appeals on November 20, 1985 (66 NY2d 872) (Foss II).
It is important to emphasize amid this hasty tide of events that on June 5, 1985 the School District voters had approved a $33 million budget for expenditures for fiscal year 1985-1986, and that the fiscal year began on July 1, 1985, when the District began to pay salaries and other bills in anticipation of the receipt of school taxes in September 1985.
On December 20, 1985, the plaintiffs, residents of the Town of Penfield, brought this action, seeking a declaratory judgment for a refund of the school tax they had paid, on behalf of themselves and as representatives of a class consisting of all owners of one-, two- and three-family dwellings (homestead properties) located in those sections of the Towns of Penfield, Walworth and Ontario which are included in the School District. The plaintiffs’ claim is that the Webster Town Board’s adoption of a dual rate tax structure and the use of those rates by the School District have resulted in the plaintiffs bearing a higher proportion of the school tax burden than do similarly situated owners of residential properties in the Town.
Previously, on March 10, 1986 the defendants moved to dismiss the complaint for failure to state a cause of action (CPLR 3211 [a] [7]). That motion was denied. Thereafter, on April 22, 1986, this court rendered a decision in Xerox Corp. v Town of Webster (131 Misc 2d 817). The Xerox decision prompted the Town of Webster to move to reargue its previous motion to dismiss the complaint in this action, and the motion was granted. At the same time, the School District sought a declaratory judgment declaring that it has no obligation to refund the 1985-1986 school tax to plaintiffs and for summary judgment upon its first two affirmative defenses. The plaintiffs cross-moved seeking, in part, partial summary judgment upon their claim for a tax refund.
The School District’s first affirmative defense alleges that the complaint fails to state a cause of action because the plaintiffs suffered no harm. It argues that its use of the dual rates certified to it by the Town did not cause the plaintiffs to *483 pay any additional school tax; that regardless of whether dual rates or a uniform rate was certified by the Town, plaintiffs would have paid the same amount of tax. The plaintiffs concede the truth of this but contend that because of the dual rate structure they paid at a greater effective tax rate for the 1985-1986 school tax than did similarly situated property owners residing within the Town of Webster.
Annexed to plaintiffs’ attorney’s affidavit in opposition to defendants’ previous motion to dismiss are tables comparing school tax levies for residential properties of equal value located within the various towns encompassed by the School District. These exhibits show that a residence valued at $50,-318 would pay a school tax of $1,115.26 if located in the Towns of Walworth or Ontario, $1,103.02 if in the Town of Penfield, and $939.79 if in the Town of Webster. These figures, which are not contested by the defendants, plainly show that unequal tax burdens were imposed on similar properties solely by reason of geographic location.
In Foss I (supra), it was held in part that the imposition of demonstrably different tax burdens on similar properties in different geographic locations, absent the showing of a rational demographic basis, results in invidious discrimination, violating the equal protection clauses of the Federal and State Constitutions. Thus, whether the plaintiffs were required to pay more in school tax than they would have under a uniform tax rate is not determinative. Rather, the appropriate inquiry is whether they, compared with similarly situated taxpayers receiving the same services from the School District, are subject to different tax burdens solely by reason of geographic location. The plaintiffs have demonstrated that such an inequity existed as to the 1985-1986 school tax imposed pursuant to the now defunct Real Property Tax Law article 19-A, and, accordingly, the decisions in Foss I and Foss II (supra) compel a declaration that the levy was unconstitutional.
This conclusion does not, however, require a tax refund to plaintiffs. Generally, where taxes are paid pursuant to a tax law subsequently declared unconstitutional, courts have declined to order refunds on a number of grounds, (1) that the taxing unit relied upon the revenues derived, and (2) that an undue burden would be imposed if it were required to make a refund (Foss v City of Rochester, 65 NY2d 247, 260, supra; Hurd v City of Buffalo, 41 AD2d 402, 404-405, affd 34 NY2d 628; see also, Lemon v Kurtzman, 411 US 192, 199).
*484 Plaintiffs rely upon Bethlehem Steel Corp. v Board of Educ. (44 NY2d 831), in which municipalities were directed to refund taxes after a State law authorizing real property to be taxed at a rate in excess of the constitutional limit was held unconstitutional. But a proper understanding of the underlying motivation in the Bethlehem Steel decision must begin with Hurd v City of Buffalo (34 NY2d 628, supra). At issue in Hurd was a provision of the Local Finance Law (§ 11.00 [a] [42-a]) which exempted taxes levied for pension and retirement benefits from the 2% constitutional limitation on real property taxation (NY Const, art VIII, § 10). Although the statute and the taxes levied pursuant to it were held unconstitutional, retroactive relief was withheld because the municipality had relied upon the statute in preparing its budget. Under such circumstances, it was held that "to mandate repayment of amounts illegally collected in the past would place an impossible burden upon [the municipality]” (41 AD2d, at p 406).
Following the Hurd decision (supra), the Legislature attempted to alleviate the fiscal crisis faced by municipalities and school districts caused by the limitations on their taxing authority. Laws of 1974 (chs 496, 497) continued the exemption from the constitutional limitation for pension and retirement benefits on a temporary, emergency basis. Thereafter, in the general election of November 1975, a proposed constitutional amendment which would have modified or repealed the real property taxing limitations was defeated by the voters (see, Bethlehem Steel Corp. v Board of Educ., 61 AD2d 147, 153).
Faced with this defeat, the Legislature enacted legislation which was again designed to allow certain municipalities and school districts to exclude pension and retirement benefits from the constitutional tax limitations on a temporary emergency basis (L 1976, ch 349). It is this legislation which was at issue in the Bethlehem Steel case. In holding that legislative effort unconstitutional, the Court of Appeals stated that it amounted to "nothing more than an attempt to circumvent the constitutional limitation upon the amount of revenue that may be raised by local subdivisions of the State through the taxation of real property * * * [and that it was] indistinguishable from the legislation struck down as unconstitutional in Hurd” (Bethlehem Steel Corp. v Board of Educ., 44 NY2d 831, 834, supra). After so holding, the Court of Appeals rejected the conclusion of the Appellate Division (61 AD2d 147, supra) that *485 the plaintiffs were not entitled to tax refunds because of the municipalities’ reliance upon the invalidated legislation in the preparation of their budgets, and stated that "the same rationale can no longer be applicable today. In view of Hurd (supra), local subdivisions were put on notice that patent circumvention of constitutional limitations on their taxing powers would not be tolerated.” (44 NY2d, at p 835.)
One obvious distinction between this case and Bethlehem Steel is the type of constitutional violation at issue. Hurd and Bethlehem Steel involved a constitutional provision mandating a specific percentage limitation on the amount of tax revenue which could be derived through taxation of real property. Therefore, whether a constitutional violation existed could be determined by simple mathematics. In the Foss cases, however, the constitutional violation involved the much more nebulous concept of equal protection. Whether article 19-A would be found constitutional was not an answer which could be obtained with mathematical precision. Instead, the answer depended upon whether the change in the tax assessment and collecting procedure effected by article 19-A would be sufficient to persuade but one of the majority members of the Court of Appeals to change his or her previous stand in Foss I. In this regard, the persuasive dissent of Chief Judge Wachtler cannot be overlooked, nor can the fact that article 19 was found to be unconstitutional as applied.
Another significant distinction is the amount of time between Hurd and Bethlehem Steel as opposed to the time between Foss I and Foss II. The Appellate Division’s May 1973 decision in Hurd was affirmed by the Court of Appeals in March 1974. At issue in Hurd were tax payments made for the 1971-1972 tax year. Bethlehem Steel was decided in January 1978, and involved a 1976-1977 tax year. Thus, nearly four years passed, and five fiscal years, before refunds were held appropriate.
Furthermore, as discussed above, in the intervening years between Hurd and Bethlehem Steel, the Legislature continued to pass legislation virtually identical to that held unconstitutional in Hurd, thereby authorizing municipalities to continue to tax in excess of the constitutional limit, and in blatant disregard of Hurd. The constitutional infirmity of such measures was further highlighted by the presenting of a referendum to voters in November 1975 for a constitutional amendment repealing the real property tax limit. Following the defeat of this referendum, the Legislature again resorted to *486 the passage of measures authorizing municipalities to disregard the constitutional limitation. Confronted with such total disregard for its pronouncement in Hurd, the Court of Appeals was left with little alternative but to permit retroactive relief. Limited to prospective relief, taxpayers would continue to be taxed at excessive rates because of the Legislature’s continued passage of authorizing legislation to replace each previous enactment as it was declared unconstitutional. Compelling municipalities to refund all taxes so collected served to put an end to this practice.
In this case, however, Foss I was decided only three months before the School District mailed the tax bills for fiscal year 1985-1986, and less than one month before that fiscal year began. It was only one month before the school tax bills were mailed that article 19-A was enacted. Given this short time frame, even if the defendants had reason to believe that article 19-A would be found unconstitutional, there was little that could be done, as practicality demanded that the governmental process go on (see, Pellnat v City of Buffalo, 59 AD2d 1038). As in Hurd, the School District relied upon the invalidated legislation in preparation of its budget. Completely lacking in this case is the blatant and repeated disregard of the constitutional mandate which was present in Bethlehem Steel, where the court referred to the attacked legislation as "palpable evasion” and "patent circumvention of constitutional limitations” (44 NY2d, at pp 834, 835).
The plaintiffs contend that the defendants were put on notice of the unconstitutionality of article 19-A prior to the mailing of the tax bills. One such allegation is that this court warned the defendants in August 1985 that by proceeding with the 1985-1986 school tax levy the defendants would be exposing themselves to the possibility of a taxpayer refund lawsuit. This statement, made during the course of the Xerox v Town of Webster litigation (131 Misc 2d 817, supra), is, however, taken out of context. The so-called warning pertained solely to the plaintiff Xerox which had, by commencing its action prior to the tax levy as well as by seeking injunctive relief, preserved its right to obtain a refund should article 19-A later be held unconstitutional (cf. Lemon v Kurtzman, 411 US 192, supra). The plaintiffs, however, by commencing this action only after the levy and after the Foss II decision, did not similarly preserve their rights.
Plaintiffs also make reference to a statement by the Town’s attorney following Foss I to the effect that the homestead dual *487 rate tax structure could not be used for the imposition of county or school taxes. This statement, however, pertained to the impact of Foss I and does not address the constitutional viability of article 19-A.
Lastly, the plaintiffs make reference to a memorandum from the New York State Assembly Minority Office of Research and Program Development dated September 5, 1986 which discusses as "one school of thought”, regarding the prognosis of article 19-A "(while not really changing anything * * *) [it] will swing one vote when the Court [of Appeals] hears the inevitable challenge.” However, as stated above, given the type of constitutional right at issue (i.e., equal protection), such qualified statements as to the viability of article 19-A should not be a basis for imposing retroactive relief, particularly with the time constraints involved here. Furthermore, predictions of article 19-A’s unconstitutionality were not unanimous. The court has reviewed the bill jacket supplied by the Governor’s office, which contains a memorandum from the Attorney-General expressing the opinion that "the State would stand a very good chance of succeeding in upholding this revised scheme” while admitting that "the outcome of such challenge could not be predicted with certainty”. Also contained in the bill jacket is a letter, dated July 24, 1985, from the Corporation Counsel of Rochester to the Governor’s counsel stating (at p 2) "We recognize that there is a strong likelihood of litigation over the validity of this bill. However, we believe that the arguments in favor of the bill’s constitutionality are strong, and that the courts are likely to uphold the bill.”
For the foregoing reasons, Bethlehem Steel (supra) is not authority for the granting of refunds in this case for the 1985-1986 tax year. However, because the school tax levy for fiscal year 1985-1986 violated the plaintiffs’ rights to equal protection, the Town’s motion to dismiss the complaint for failure to state a cause of action is denied, as is the School District’s motion for summary judgment as to its first affirmative defense. For the same reason, plaintiffs’ motion for partial summary judgment is granted to the extent of declaring that the school tax levy was unconstitutional. Because the plaintiffs are not entitled to a tax refund, the School District’s motion for summary judgment as to its second affirmative defense is granted.
The above resolution renders academic plaintiffs’ application for certification of the class.
*488 Submit order accordingly.