Morris Rokowsky, Appellant, v State Board of Equaliza-
tion and Assessment et al., Respondents.

Third Department, December 5, 1991

APPEARANCES OF COUNSEL

*Podell, Rothman, Schechter & Banfield (Gary Schuller* and *William E. Banfield* of counsel), for appellant.

*Robert Abrams, Attorney-General (Daniel Smirlock* and *Nancy A. Spiegel* of counsel), for respondents.

## OPINION OF THE COURT

YESAWICH JR., J.

Plaintiff, an owner of real estate in New York City, one of two special assessing units in the State (RPTL 1801), commenced this action pursuant to RPTL article 7 alleging inequality of assessment of his property. It is his contention that his residential property, classified as class two real property (RPTL 1802 [1]), has a disproportionately high ratio of assessed value to full (market) value in comparison to other property in the same class on the same assessment roll (*see,* RPTL 701 [8] [b]). A property owner seeking to establish ratio inequality, who, like plaintiff, is in a special assessing unit and who commences a proceeding with respect to assessment rolls completed after December 31, 1981, is relegated by statute to proving his claim by resorting to either a "stratified random sample" of parcels in the same tax class (RPTL 720 [3] [b] [1]) or "the latest applicable class ratio established for the roll containing the assessment under review" (RPTL 720 [3] [b] [2] [c]). At least once every three years, defendant State Board of Equalization and Assessment determines class ratio by sampling the ratio of assessments to market values of taxable real property for each class of property established under RPTL article 18 (RPTL 1200 [1]; 1202 [1] [b]).

Defendants acknowledge that because of a two-to-four-year time lag in the market value survey utilized to compute class ratios, New York City's 1984, 1985, 1986 and 1987 class ratios used 1983 market values and the 1988 class ratio used 1986 market values. Plaintiff assails defendants' methodology, which reflects changes in assessed valuation but not in market value between surveys, because it overstates the actual per-

centage of assessed valuation to current market valuation and also because the alternative, the stratified random sample method, is prohibitively expensive. In his complaint, plaintiff charges that despite the fact that the class ratios are obviously corrupted, he and similarly situated taxpayers have no reasonably effective means of demonstrating this because "the stratified random sample parcel approach presents a cost-prohibitive obstacle to proving ratio".

■ The specific relief sought by plaintiff is a judgment declaring defendants' methodology invalid because it fails to produce ratios for tax class two properties in New York City that measure "as near as may be" (RPTL 1202 [1] [a]) the percentage of full value at which real property is assessed (RPTL 1202 [1] [a], [b]), declaring the class two ratios resulting therefrom for the calendar years 1982 through 1988 null and void, and an injunction directing defendants to establish class ratios according to a methodology that will result in a contemporaneous measurement of assessed values in relation to market values. Concluding, as urged by defendants, "that the Legislature has determined that public policy precludes such review of class ratios by individual taxpayers" and "rely[ing] upon the line of cases that denie[s] standing to individual taxpayers challenging equalization rates", Supreme Court found that plaintiff lacked standing to challenge the class ratio methodology and granted defendants' motion for summary judgment dismissing the complaint. Plaintiff appeals. We affirm.

It is beyond dispute that individual taxpayers lack standing to challenge the methodology used by defendants to calculate equalization rates *(see,* RPTL 1218; *Guth Realty v Gingold,* 34 NY2d 440, 450; *Matter of O'Brien v Assessor of Town of Mamaroneck,* 20 NY2d 587, 596; *Central Buffalo Project Corp. v City of Buffalo,* 74 AD2d 336, 340, *affd* 52 NY2d 986; *860 Executive Towers v Board of Assessors,* 53 AD2d 463, 467, *affd sub nom. Matter of Pellaton Apts. v Board of Assessors,* 43 NY2d 769). Our perception is that class ratios should not be treated any differently in this regard. A class ratio is essentially an equalization rate computed for a particular class of property; class ratios are calculated separately "for each class of property" in a given special assessing unit (RPTL 1202 [1] [b]), whereas State equalization rates are calculated by commingling the various types of property in a given nonspecial assessing unit (RPTL 1202 [1] [a]).

Equalization rates fulfill many functions, for example, the

distribution of several forms of State aid, fixing municipal tax and debt limits, and the apportionment of school and county taxes among the different assessing units. They also serve an evidentiary purpose when assessments are challenged. The fact that class ratios are utilized mainly as evidence in tax certiorari proceedings does not compel the conclusion, as plaintiff urges, that class ratios must therefore be more precise. Significantly, while the statute mandates the State Board of Equalization and Assessment to "ascertain as near as may be the percentage of full value" in determining equalization rates (RPTL 1202 [1] [a]), it imposes no such requirement with respect to class ratios (RPTL 1202 [1] [b]).

■ Neither are we persuaded on the record before us that plaintiff and similarly situated New York City real property taxpayers are further disadvantaged in that they have no reasonably effective means available to them of proving inequality vis-à-vis ratio because the alternative, the stratified random sample method, is economically unfeasible. Plaintiff's reliance on the observation in *Matter of Slewett & Farber v Board of Assessors* (80 AD2d 186, 215, *mod on other grounds* 54 NY2d 547) that "parcel selection seems an unconstitutionally expensive method by which to prove inequality" is misplaced. The method of parcel selection contemplated there required a sampling "of *all* locally assessed taxable parcels on the assessment roll" (RPTL 720 [3] [b] [1] [emphasis supplied]), regardless of the property involved. By contrast, in the random sample method used for special assessing units such as New York City, the random sample need only be drawn from within "the major type of property in which the assessment under review is classified" (RPTL 720 [3] [b] [1]), and thus the taxpayer need not consider the entire roll in proving inequality (Hogan and DeBragga, *Proving Inequality in Property Tax Assessment Proceedings: Bringing Confusion Out of Chaos,* 59 NY St B J 44, 46). Hence, at least in the State's two special assessing units, New York City and Nassau County, stratified random sampling appears to provide a reasonable mechanism for achieving relief from tax assessment inequality.

There is some actuality in plaintiff's concern that permitting only municipalities *(see,* RPTL 1218) to call into question defendants' methodology for determining class ratios effectively screens class ratios from judicial review because municipalities are unlikely to challenge the overstatement of the class ratio percentage from which they benefit. A taxpayer's due process right to be heard, however, "does not include an

opportunity to judicially contest the merits of every legislative determination in the taxing statute" *(Matter of Consolidated Edison Co. v State Bd. of Equalization & Assessment,* 103 AD2d 453, 457, *affd* 67 NY2d 783, *appeal dismissed* 479 US 801). Inasmuch as the stratified random sample method affords plaintiff, a taxpayer in a special assessing unit, a reasonable alternative to the class ratio for proving ratio, barring him from challenging the class ratio methodology for lack of standing does not violate his right to due process *(see, Matter of Slewett & Farber v Board of Assessors, supra,* at 215-217; *cf., Boryszewski v Brydges,* 37 NY2d 361, 364).

MAHONEY, P. J., WEISS, LEVINE and MERCURE, JJ., concur.

Ordered that the order is affirmed, without costs.