16 N.Y.2d 1 (1965)
In the Matter of Atlantic Gulf & Pacific Co., Appellant,
v.
Lawrence E. Gerosa, as Comptroller of the City of New York, Respondent.
Court of Appeals of the State of New York.
Argued April 12, 1965.
Decided June 10, 1965.
Stephen M. Piga and Gwynne H. Wales for appellant.
Leo A. Larkin, Corporation Counsel (Samuel J. Warms, Stanley Buchsbaum and Sanford I. Freedman of counsel), for respondent.
Chief Judge DESMOND and Judges DYE, BURKE, SCILEPPI and BERGAN concur with Judge FULD; Judge VAN VOORHIS dissents in an opinion.
*4 FULD, J.
This is an article 78 proceeding to review the determination of the Comptroller of the City of New York imposing a compensating use tax upon a dredge and some pipe lines belonging to the petitioner, a West Virginia corporation having its principal place of business in New York City. The Appellate Division unanimously confirmed the Comptroller's determination and the petitioner appeals as of right on constitutional grounds.
The petitioner, engaged in the business of dredging rivers and harbors, purchased the dredge here involved in Maryland in 1948. It was registered with the United States Coast Guard in December of that year, its home port being designated as "New York, N. Y." The dredge was immediately put to work in South Carolina and was thereafter used  for some eight years  in dredging operations in Florida, South Carolina and Virginia. It was first brought into New York City in July of 1956 and, after completing dredging contracts in the city's harbor waters  which took about six weeks  the dredge was moved to Connecticut in September, 1956.
On the assumption that they were not subject to the New York City use tax, the petitioner omitted from its tax returns both the dredge and certain used pipe and pontoon line equipment (also purchased outside New York City) which it employed within the city to haul dredged material over water and land to the shore area to be filled. The Comptroller determined, after a hearing, that there was a tax deficiency on these items of about $33,000 plus penalties and interest.[1]
Section M46-16.0 of the Administrative Code of the City of New York (numbered § M41-16.0 at the time the tax herein was imposed) provides in part that "there is hereby imposed and there shall be paid by every person a tax on the use within the city of any tangible personal property purchased at retail." The term "use" as employed therein is defined as the "exercise of any right or power over tangible personal property by the purchaser thereof and includes but is not limited to the receipt, storage or any keeping or retention for any length of time, *5 withdrawal from storage, any installation, any affixation to real or personal property, or any consumption of such property" (§ M46-15.0, subd. 1; emphasis supplied).
Despite the broad wording of the statute, the petitioner contends that, because the tax is, in terms, based upon the "consideration given" for personal property,[2] its sole purpose is to eliminate sales tax avoidance by imposing a use tax identical with the sales tax but only on property purchased outside the city and brought into the city within a reasonable period after purchase; that the statute was not intended to apply to property brought into and used in the city years after its purchase and use elsewhere.
However, in the light of other provisions of the use tax statute, and they must, of course, be considered in ascertaining the actual meaning of the sections here involved, it is clear that the tax is not based only upon the retail selling price to  that is, the "consideration" paid by  the taxpayer. Of great significance is the fact that the Comptroller was granted the power to "prescribe methods for determining the value of tangible personal property" (§ M46-28.0, subd. 5; emphasis supplied)  a power not granted him in the sales tax law (§ N46-12.0). The statute also provides for collection from vendors in some instances, and also from purchasers, of use taxes equalling four  at the time in question three  per cent of the "value" of the property sold (§§ M46-19.0, M46-21.0). Moreover, it authorizes a vendor to collect a use tax either at the time of the sale of the property "or if the use is not then taxable hereunder, at the time such use becomes taxable". In similar vein, a purchaser of property, where required to file a return, must show the value of such property, "the use of which became subject to the tax * * * during the preceding quarterly period" (§§ M46-18.0, M46-21.0). Furthermore, and beyond all this, the Comptroller, in the exercise of the general rule-making power granted him by the local law (§ M46-28.0, subd. 1), actually adopted a regulation declaring that property which is used in New York City following its purchase and initial use outside the city shall *6 be subject to a use tax computed on the basis not of the "purchase price" of the property but of its "value" (City Sales and Use Tax Reg., art. 2[F]).[3]
It seems manifest that the Legislature contemplated that, in appropriate circumstances, a use tax might be imposed not measured by the original price and without relation to the time of sale. Undoubtedly included within the ambit of the statute is a tax upon the use in the city of property such as the present which had been purchased and used for the first time elsewhere, and such a construction has been accorded not only the statute before us (see Matter of United Air Lines v. Joseph, 281 App. Div. 876, mot. for lv. to app. den. 306 N.Y. 981) but similar statutes in other states. (See, e.g., Fontenot v. S. E. W. Oil Corp., 232 La. 1011; Lane Constr. Corp. v. Comptroller, 228 Md. 90; cf. Morrison-Knudsen Co. v. State Tax Comm., 242 Iowa 33; Rowan Drilling Co. v. Bureau of Revenue, 60 N. M. 123; Comptroller v. Thompson Trailer Corp., 209 Md. 490 [cases reaching contrary conclusion by reason of tax laws applicable to personal property "purchased for use" in the state and the like].)
Turning to the petitioner's arguments with respect to the alleged unconstitutionality of the use tax law, we note that a number of them  dealing with asserted violations of the interstate commerce and equal protection clauses of the United States Constitution (art. I, § 8; 14th Amdt.) and the State Constitution's provisions with respect to the Legislature's powers (N. Y. Const., art. III, § 1)  are based upon the erroneous assumption that the measure of the use tax is solely the purchase price rather than the value of personal property, and, hence, are not relevant.
The petitioner's further constitutional argument  that the use tax is an unconstitutional burden on interstate commerce because of the possibility of multiple state taxation  has long been laid to rest. (See, e.g., Southern Pacific Co. v. Gallagher, 306 U. S. 167; Henneford v. Silas Mason Co., 300 U. S. 577; cf. *7 Halliburton Oil Well Co. v. Reily, 373 U. S. 64, 66, 70.) In the Henneford case (300 U. S. 577, supra), the Supreme Court, after ruling that a use tax does not "hamper the transactions of interstate commerce or discriminate against them" (p. 583), declared, with respect to the possibility of multiple taxation, "It will be time enough to mark [the limits of a state's taxing powers] when a taxpayer paying in the state of origin is compelled to pay again in the state of destination" (p. 587). In Henneford, the Washington statute there dealt with provided for a credit against its local tax sales or use taxes paid in other states. However, the Supreme Court reached the same conclusion with respect to the constitutionality of the use tax in the Southern Pacific Co. case (306 U. S. 167, supra), even though there, as here, the California use tax in question provided no such credit.
As in Southern Pacific, so here, no problem of multiple taxation confronts us, for the petitioner acknowledges that there is "no evidence" of any other sales or use tax having been imposed on its dredge or pipe lines. Nor may it be urged that it is unfair to charge the petitioner a use tax on a product brought into New York City more than eight years after its purchase for two small jobs lasting less than a month and a half. In Southern Pacific (306 U. S. 167, supra), the use tax was upon railroad equipment, machinery and the like, some of which were installed, upon importation, on interstate transportation facilities. "We think", the Supreme Court wrote, "there was a taxable moment when [these articles] had reached the end of their interstate transportation and had not begun to be consumed in interstate operation" (p. 177; see, also, Eastern Air Transp. v. Tax Comm., 285 U. S. 147). Although the court was there interested in the question of a state tax upon the operations of interstate commerce, its decision points up the inconsequence of the shortness of time that a taxed article remains within the state as a factor in determining the tax's validity. In addition, in the United Air Lines case (281 App. Div. 876, mot. for lv. to app. den. 306 N.Y. 981, supra), the airplane parts held subject to the use tax were installed on airplanes which spent most of their time in travel outside the city. In light of these cases, the taxation of property belonging to a company whose principal *8 place of business was in New York City was not unconstitutional, even though the property has so far been used in the city for less than two months.
One further consideration. The purpose of a use tax is not only to prevent tax avoidance but to enable city retail sellers "to compete upon terms of equality with retail dealers in other states [or cities] who are exempt from a sales tax or any corresponding burden." (Henneford v. Silas Mason Co., 300 U. S. 577, 581, supra; see, also, Union Oil Co. of Cal. v. State Bd. of Equalization, 60 Cal. 2d 441.) In a great many instances, and particularly where property worth thousands or hundreds of thousands of dollars and capable of use over a long period of years might be involved, it is manifest that New York City retail merchants would be at a competitive disadvantage with other merchants if the latter might be saved the expense of a use tax by the simple expedient of buying and using the property outside the city for a period sufficiently long to avoid the imposition of such a tax. Impartial application of the use tax here upheld prevents such an outcome.
We have considered the further arguments advanced by the petitioner and find them without merit.
The order of the Appellate Division should be affirmed, with costs.
VAN VOORHIS, J. (dissenting).
The compensating use tax was designed to prevent evasion of the sales tax in case of property purchased outside of New York City for permanent use therein. It seems to me that regardless of whether the 3% tax be computed on the value or the purchase price, it was not intended to apply to equipment, such as this dredge, which was brought into the city only temporarily for the performance of a dredging contract. There is no analogy between that situation and one where, for instance, a resident of New York City purchases an automobile elsewhere for permanent use in the city or, indeed, where airplane parts are purchased elsewhere for installation in planes in the city (Matter of United Air Lines v. Joseph, 281 App. Div. 876, mot. for lv. to app. den. 306 N.Y. 981; Matter of Jacobs v. Joseph, 282 App. Div. 622). Installation of airplane parts in planes in the city is not analogous *9 to the temporary importation of construction or dredging equipment for ad hoc use on some particular job.
The order appealed from should, in my judgment, be reversed, the determination of tax and penalties annulled, and money paid or deposited with the city refunded.
Order affirmed.
NOTES
[1] It appears that no sales or use tax (on these items) was paid to any other jurisdiction.
[2] Section M41-16.0 provided, at the time of the transactions in question, that "such tax shall be at the rate of three per centum of the consideration given or contracted to be given for such property or its use plus the cost of transportation, except where such cost is stated and charged separately".
[3] The text of the Regulation, insofar as pertinent, reads as follows: "Where the property has been used outside the city by a person engaged in business both within and without the city, and is subsequently used in the city by such person, the tax is computed on the value of the property rather than the purchase price." (Emphasis supplied.)