VALENTINO GANDOLFI et al., Respondents-Appellants, v CITY OF YONKERS et al., Appellants-Respondents. (Action No. 1.)

PLATZNER ORGANIZATION et al., Respondents, v DAVID A. SHULMAN, as Commissioner of Finance of the County of Westchester, et al., Appellants. (Action No. 2.)

Second Department, April 23, 1984

**APPEARANCES OF COUNSEL**

*Henry J. Logan, County Attorney* (*Lester D. Steinman* and *Kenneth E. Powell* of counsel), for the County of Westchester, appellant-respondent in Action No. 1 and appellant in Action No. 2, and the Westchester County

Board of Legislators and another, appellants in Action No. 2.

*Arthur J. Doran, Jr., Corporation Counsel (Joseph E. St. Onge* and *Stephen J. Mignano* of counsel), for the City of Yonkers, appellant-respondent in Action No. 1 and appellant in Action No. 2.

*Maxwell E. Charat, Corporation Counsel (Daniel W. Boddie* of counsel), for the City of New Rochelle, appellant in Action No. 2.

*Barbara Gunther, Corporation Counsel,* for the City of Mount Vernon, appellant in Action No. 2.

*Frederick J. Adler* for respondents-appellants in Action No. 1.

*Lovett & Gould (Jonathan Lovett* of counsel), for the Platzner Organization and others, respondents in Action No. 2.

*Robert Abrams, Attorney-General (Peter H. Schiff, Melvyn R. Leventhal, Richard G. Liskov* and *August L. Fietkau* of counsel), intervenor in support of the constitutionality of section 1262-b of the Tax Law.

**OPINION OF THE COURT**

TITONE, J. P.

■ These consolidated appeals call upon us to determine the constitutional validity of section 1262-b of the Tax Law. That statute[1], which is expressly made operative only

---

1. Section 1262-b of the Tax Law currently reads as follows:

"§ 1262-b. Disposition of revenue from sales and use taxes imposed by Westchester county

"Notwithstanding any other provision of the tax law to the contrary, if the county of Westchester imposes a tax pursuant to section twelve hundred ten of this chapter, and until such time as the real property tax limitations in the constitution of the state of New York with respect to cities are increased, the county may apportion the net collections from such tax among the cities and towns of the county on the basis of the ratio which the full valuation of real property in each city or town bears to the aggregate full valuation of real property in all of the cities and towns in the county, provided, however, that in cities having a population of more than sixty thousand the amount of the tax so apportioned shall be equivalent to the amount collected in such cities. The sums so apportioned shall be credited to each of said cities and towns against the county taxes levied upon real property in said cities and towns, except that the county, through its chief fiscal officer may pay in cash the amount so apportioned to any city in such county having a population of sixty thousand or more in accordance with the latest decennial federal census in lieu of a credit against the county taxes levied upon real property in such city, provided, however, that any such city's portion of the county tax levied against it shall be increased by any amount which the credit apportioned to it hereunder shall exceed the credit which would otherwise be apportioned to it had the net collections from such tax been apportioned to it on the basis of the ratio which the full valuation of real

"until such time as the real property tax limitations in the constitution of the state of New York with respect to cities are increased", authorizes Westchester County to pay its share of sales tax revenue to certain cities in the county and to levy an additional property tax in those cities for the amount of taxes so paid. We conclude that section 1262-b of the Tax Law is violative of section 10 of article VIII of the New York State Constitution and is therefore unconstitutional.

## I

To place the present controversy in focus, some background discussion of municipal financing is necessary. In this State, the operations of local governmental entities are primarily funded by the real property tax and the sales tax. The real property tax is subject to a constitutional ceiling of 2% of assessed full valuation averaged over a five-year period with respect to cities and counties (NY Const, art VIII, § 10).

On the other hand, the imposition, collection and administration of the sales tax is governed entirely by statute. Thus, unlike the real property tax, the amount of revenue that may be raised by a sales or use tax is not limited by the State Constitution (see *Matter of Atlantic Gulf & Pacific Co. v Gerosa,* 16 NY2d 1).

Article 29 of the Tax Law authorizes counties as well as cities to impose a sales tax and limits the rate of the total sales tax, i.e., combined county and city sales taxes, to 3% (Tax Law, § 1210).[2] A county and a city within that county are each granted a pre-emptive right to impose a sales tax up to 1½% (Tax Law, § 1224). If either the county or city does not utilize its total pre-emptive share, the other may impose a sales tax exceeding its own pre-emptive share, subject to, of course, the 3% cap and to the right of the

property in such cities bears to the aggregate full valuation of real property in all of the cities and towns of the county and the increased amount of the county tax levied against said city shall be credited against the amount of the county tax levied against the other cities and towns in the county so that they shall be unaffected by the credit or cash payment made to said city" (as added by L 1972, ch 831, § 1; as amd by L 1974, ch 845, § 1; as amd by L 1983, ch 2, § 1).

2. Nassau County, the City of New York and the City of Yonkers, were subsequently granted special authority to impose an additional local sales tax exceeding 3% (Tax Law, §§ 1210, 1223, 1224; L 1965, ch 93; L 1974, ch 368; L 1975, ch 871; L 1976, ch 506).

nontaxing governmental entity to later recapture its share.

We are told that the City of Yonkers first imposed a 1% sales tax in 1967, increased it to 2% in 1968, and increased it further to 3% in 1969. Since Westchester County had no sales tax, Yonkers received and retained all revenues resulting from its 3% levy.

In the latter part of 1971, however, Westchester County enacted a 1% county sales tax (Local Laws, 1977, No. 77 of County of Westchester, § 2) and, by operation of section 1224 of the Tax Law, the county thereby pre-empted 1% of the sales tax revenues upon which the City of Yonkers had been relying.

This loss of sales tax revenue had a severe financial impact on Yonkers. In 1972, following the exploration of several alternatives, the City of Yonkers and Westchester County recommended that the Legislature enact the original version of section 1262-b of the Tax Law (L 1972, ch 831) which allowed the county to make direct cash payments to Yonkers in lieu of a credit against county taxes levied against real property in Yonkers. The apportionment formula was based on the assessed value of real property. By its Local Law No. 37 of 1972 the County of Westchester implemented chapter 831 of the Laws of 1972.

The legislation did not restore all of the prior revenues since the apportioned share was less than the actual revenue formerly generated by the sales tax within Yonkers. Accordingly, in 1974, the county requested further legislative action. Section 1262-b of the Tax Law was thereafter amended by the Legislature to provide that the apportionment would be equivalent to the amount of sales tax collected within the city. The Legislature also permitted Westchester County to adjust the county real property tax levy within the City of Yonkers to recover the county sales tax revenues returned to the city on a dollar for dollar basis (L 1974, ch 845). Examination of the bill jacket, setting forth the legislative history, indicates that the purpose of this amendment was to enable the county to assist the City of Yonkers in resolving its fiscal difficulties by authorizing it to distribute to the city as much of the county sales tax as Yonkers would have been able to retain in the absence of

the county's imposition of its own pre-emptive share while, at the same time, protecting the county against a loss of revenue. By its Local Law No. 4 of 1975, Westchester County put chapter 845 of the Laws of 1974 into effect.

In 1981, Westchester County increased its sales tax to the full 1½% (Local Laws, 1981, No. 117 of County of Westchester). The Cities of Mount Vernon and New Rochelle were caused fiscal problems as a result and therefore requested to be included within section 1262-b of the Tax Law as well. The Legislature responded by doing so (L 1983, ch 2, § 1) and Westchester County implemented the amendment by local law (Local Laws, 1983, No. 4 of County of Westchester).

In sum, then, section 1262-b of the Tax Law operates to hold the Cities of Mount Vernon, New Rochelle and Yonkers harmless from the loss of their sales tax revenues resulting from the implementation of a county-wide sales tax and enables Westchester County to recover an amount equal to the sales tax revenues returned to those cities by means of a county real property tax imposed in those cities.

## II

These two actions were commenced in 1983. The first, *Gandolfi v City of Yonkers,* was brought by three Yonkers property owners, purportedly as a class action. They sought a determination that section 1262-b of the Tax Law is unconstitutional, a permanent injunction against its enforcement, and refunds.

The second action, *Platzner Organization v Shulman,* was commenced by parties with real property holdings in Mount Vernon, New Rochelle and Yonkers. This action, too, challenged the constitutionality of section 1262-b of the Tax Law.

Justice Coppola, in a thoughtful opinion, concluded that section 1262-b of the Tax Law was, among other things, a clear evasion of the provisions of section 10 of article VIII of the New York State Constitution and therefore unconstitutional. Nonetheless, he found that the municipalities had relied upon the statute in "good faith" and made all relief prospective. Tax refunds were denied to the plaintiffs in the *Gandolfi* case and the municipalities were permitted

to continue to utilize section 1262-b of the Tax Law in their current budgets. Class action certification, sought by the plaintiffs in *Gandolfi* was refused.

### III

As indicated, section 10 of article VIII of the New York State Constitution places a 2% cap on real property taxes that may be imposed by cities and counties. It was originally approved by the voters in 1884 in an effort to curb the reckless use of public credit (10 Problems Relating to Taxation and Finance, 1938 New York State Constitutional Convention Committee, p 231) and though criticized as an anachronistic straight jacket on governmental operations (*id.*, p 233; Bowmar, The Anachronism Called Debt Limitation, 52 Iowa L Rev 863), it stands as a "unified and interdependent plan to control the taxing and debt-contracting power of the subdivisions of the State" (*Hurd v City of Buffalo,* 34 NY2d 628, 629).

There can be little doubt that section 1262-b of the Tax Law is intended to circumvent this constitutional limitation. The language of the statute itself, by providing that it is effective only "until such time as the real property tax limitations in the constitution of the state of New York with respect to cities are increased" (Tax Law, § 1262-b), expressly indicates that to be its purpose, and examination of the various bill jackets dispels whatever doubt there could be on that score.

The real question, then, is whether irrespective of such intent, "the letter of the Constitution [is] being 'twisted' " or whether the statute "stays within the letter of the Constitution" (*Wein v City of New York, 36* NY2d 610, 618, 619). Looking beyond mere form to the substance and effect of section 1262-b of the Tax Law, as we are required to do (*People v Westchester County Nat. Bank,* 231 NY 465, 476, quoted in *Bethlehem Steel Corp. v Board of Educ.,* 61 AD2d 147, 161, affd 44 NY2d 831, app dsmd *sub nom. City of Rochester v Waldert,* 439 US 922), we are compelled to find that it is simply an attempt to disguise a city real estate tax and thus violates both the letter and spirit of section 10 of article VIII of the State Constitution.

Two similar efforts to launder real property tax dollars were rebuffed in *Hurd v City of Buffalo* (*supra*) and *Bethle-*

*hem Steel Corp. v Board of Educ. (supra)*. In *Hurd,* the Legislature, in attempting to alleviate a budgetary crisis in the City of Buffalo, purported to assign a period of probable usefulness of three years for amounts paid by a city within Buffalo's population bracket for pension or retirement benefits (L 1969, ch 1105). By this scheme, the Legislature intended to exclude the taxes required to meet direct annual budgetary appropriations for these items from the ambit of section 10 of article VIII of the State Constitution. The Court of Appeals found the measure to be "palpably in violation of the plan and purpose" of constitutional constraints and, therefore, unconstitutional (*Hurd v City of Buffalo,* 34 NY2d 628, 629, *supra*).

The method employed in the *Bethlehem Steel Corp.* case (*supra*), was slightly more elaborate. This time, the Legislature enacted two statutes. The first, the Emergency City and School District Relief Act (L 1976, ch 349, § 2), was similar to the legislation struck down in *Hurd* (*supra*) in that it also purported to assign a period of probable usefulness for pension and retirement benefits. The second, the State Real Property Tax Act (L 1976, ch 349, § 3), was to become effective only if the former were to be declared unconstitutional. It permitted the governing bodies of certain school districts to request the State Comptroller to make State aid payments in a maximum amount set forth in the statute. The maximum amounts were defined as the amounts that eligible municipalities would have been permitted to exclude under the Emergency Relief Act. In turn, the State was then empowered to levy a State real estate tax on the recipient municipality in the same manner and at the same time as local city and school district real property taxes.

The Appellate Division, Fourth Department, found both statutes unconstitutional. Pertinently, it reasoned: "That the State Real Property Tax Act is labeled a State tax and that the tax is to be collected by the State and remitted to the cities and school districts through the device of State Aid do not, as appellants contend, make it a State tax and, therefore, exempt from section 10 of article VIII of the New York State Constitution. For it has the same purpose, has the same effect, and serves the same cities and school

districts as the Emergency Relief Act — concededly a measure designed to permit *local taxes*. In effect, it can be said that the State Real Property Tax Act is the Emergency Relief Act but operating under a different name and in a different way. The only difference between the two acts is the way in which they seek to circumvent section 10 of article VIII of the Constitution: the Emergency Relief Act does it through the device of giving a period of probable usefulness to pension and Social Security costs; the State Real Property Tax Act does it by making a State tax out of a local tax" (*Bethlehem Steel Corp. v Board of Educ.*, 61 AD2d 147, 160, *supra*).

The Court of Appeals, adopting this analysis, agreed and observed that "[t]he challenged legislation, including the alternative State Real Property Tax Act (L 1976, ch 349, § 3), presents nothing more than an attempt to circumvent the constitutional limitation upon the amount of revenue that may be raised by local subdivisions of the State through the taxation of real property" (*Bethlehem Steel Corp. v Board of Educ.*, 44 NY2d 831, 834, *supra*).

The defendants' attempt to distinguish *Bethlehem Steel Corp.* (*supra*) and *Hurd* (*supra*) is not persuasive. While they claim that section 1262-b of the Tax Law does not involve an attempt at concealment or an attempt to project the tax imposed as anything other than a county tax levied for county purposes, the facts show otherwise.

When Westchester County enacted its sales tax, it set the rate at 1% of sales and some time later increased the rate to 1½% of sales. Thereafter, by virtue of section 1262-b of the Tax Law (as amended by L 1974, ch 845), it undertook to increase real estate taxes in the City of Yonkers, not for its own purposes, but to replace moneys it had returned to Yonkers for its use. In other words, as in *Bethlehem Steel Corp.* (*supra*), the additional property tax was levied for the benefit of the City of Yonkers which could not itself levy the tax as it had already reached its 2% constitutional limitation.

The Cities of Mount Vernon and New Rochelle suggest that a different rule should apply to them as they have not yet reached their 2% constitutional limitation. The difficulty with that argument is that section 1262-b of the Tax

Law has the effect of enlarging that limitation — precisely the evil that the State constitutional provision is designed to preclude — and, therefore, is just as invalid when implemented by them (cf. *Bethlehem Steel Corp. v Board of Educ.*, 61 AD2d 147, 162, *supra*). If these cities have not reached the constitutional limitation, they may, of course, increase local real property taxes to that limit, but the county should not be permitted to do so on their behalf.

Although we empathize with the plight of the local governments involved, we cannot ignore the clear mandate of specific constitutional provisions designed to control the taxing and debt-contracting powers of political subdivisions of the State (*Hurd v City of Buffalo,* 34 NY2d 628, 629, *supra;* see Morris, Evading Debt Limitations with Public Building Authorities: The Costly Subversion of State Constitutions, 68 Yale LJ 234; cf. *Flushing Nat. Bank v Municipal Assistance Corp.,* 40 NY2d 731, 740). Consequently, we hold that section 1262-b of the Tax Law conflicts with section 10 of article VIII of the State Constitution. On this analysis, there is no need to reach the equal protection and due process claims and accordingly, the decretal paragraphs of the judgments and orders appealed from which declare section 1262-b unconstitutional upon those grounds should be deleted.

IV

■ We turn, then, to the question of corrective action. Special Term made its declaration of unconstitutionality prospective only, to take effect, in essence, upon the adoption of the next municipal budgets, and declined to order the tax refunds sought by the plaintiffs in *Gandolfi.* We disagree.

A court may delay implementation of a judicial mandate in extraordinary circumstances (cf. *Flushing Nat. Bank v Municipal Assistance Corp.,* 40 NY2d 731, 741, *supra; New York State Bankers Assn. v Albright,* 38 NY2d 430, 441; *Matter of Hellerstein v Assessor of Town of Islip,* 37 NY2d 1, 14). Thus, in *Hurd v City of Buffalo* (34 NY2d 628, affg 41 AD2d 402, *supra*), the declaration was made prospective because of the reliance upon the invalidated legislation in preparation of the defendant's budget. This rationale is inapplicable now since, as a result of *Hurd* (*supra*), "local

subdivisions were put on notice that patent circumvention of constitutional limitations on their taxing powers would not be tolerated" (*Jones v City School Dist.*, reported *sub nom. Bethlehem Steel Corp. v Board of Educ.*, 44 NY2d 831, 835). Moreover, as reflected by the bill jackets, the defendants were well aware of the potential challenges to the legislation (see, also, 1984 Opns St Comp No. 84-3, p 3).

Nor, for similar reasons, should those taxpayers who filed appropriate protest be precluded from obtaining a refund of real property taxes paid (*Bethlehem Steel Corp. v Board of Educ., supra,* p 835; cf. *City of Rochester v Chiarella,* 58 NY2d 316, 323). "Where protest has been interposed, the municipality is notified that it may be obliged to refund the taxes and is required to be prepared to meet that contingency" (*Mercury Mach. Importing Corp. v City of New York,* 3 NY2d 418, 426; see, generally, Field, The Recovery of Illegal and Unconstitutional Taxes, 45 Harv L Rev 501). To the extent that *Pellnat v City of Buffalo* (59 AD2d 1038) may be to the contrary, we find it consistent with *Bethlehem Steel Corp. v Board of Educ.* (44 NY2d 831, 835, *supra*), subsequently decided by the Court of Appeals. Because the parties dispute whether protest was, in fact, made and the record is unclear, summary disposition of the issue is improper and the matter must be remitted for a hearing.

## V

Some final comment is in order on the denial of class action certification sought by the *Gandolfi* plaintiffs. The class was to be composed of "all persons, firms or corporations who have been additionally taxed since 1974".

■ We find that Special Term's disposition was clearly correct. Class action status is inappropriate where governmental operations are involved and subsequent plaintiffs will be adequately protected under the principles of *stare decisis* (*Matter of Martin v Lavine,* 39 NY2d 72, 75; *Suffolk Housing Servs. v Town of Brookhaven,* 69 AD2d 242, 248, app dsmd 48 NY2d 652). To the extent that the *Gandolfi* plaintiffs continue to press for a class action to enhance their tax refund claims, it is sufficient to note that such a claim is personal to the taxpayer and that, as observed

above, only those who have filed an appropriate protest may obtain a tax refund.

## VI

For the reasons stated, the judgments and orders appealed from should be modified, on the law, by (1) deleting the decretal paragraphs declaring that section 1262-b of the Tax Law is unconstitutional as violative of sections 6 and 11 of article I of the New York State Constitution and the Fourteenth Amendment of the United States Constitution, (2) deleting the provisions postponing injunctive relief[3] and (3) in *Gandolfi v City of Yonkers,* by deleting the provision denying the plaintiffs' demand for refunds. The *Gandolfi* case should be remitted to the Supreme Court, Westchester County, for further proceedings in accordance with this opinion. As so modified, the judgments and orders should be affirmed insofar as appealed from, with one bill of costs to the plaintiffs in each action against the defendants therein appearing separately and filing separate briefs.

LAZER, THOMPSON and RUBIN, JJ., concur.

In *Gandolfi v City of Yonkers:* Judgment and order (one paper) of the Supreme Court, Westchester County, dated January 10, 1984, modified, on the law, by deleting (1) the second decretal paragraph, (2) so much of the third and fourth decretal paragraphs as limits injunctive relief "with respect to any future taxation which is neither the subject of the municipal budget of the County of Westchester or [*sic*] the City of Yonkers enacted * * * by such municipality prior to the date of the entry of [the] judgment [and order]", and (3) so much of the sixth decretal paragraph as dismisses the second cause of action asserted in plaintiffs' complaint seeking a refund of taxes paid. As so modified, judgment and order affirmed insofar as appealed from, and matter remitted to the Supreme Court, Westchester

---

**3.** We note that the plaintiffs in *Platzner* have not cross-appealed from the judgment and order which determined that case, but we find that the grant of affirmative relief to them is not interdicted by the case of *Hecht v City of New York* (60 NY2d 57). For one thing, the case was decided on cross motions for summary judgment and therefore we have the power to search the record and grant appropriate relief (*Merritt Hill Vineyards v Windy Hgts. Vineyard,* 61 NY2d 106, 110-112). Secondly, consistency in the results of the two appeals before us is necessary (cf. *Cover v Cohen,* 61 NY2d 261, 277-278).

County, for further proceedings in accordance with the opinion by Titone, J. P.

In *Platzner Organization v Shulman:* Judgment and order (one paper) of the Supreme Court, Westchester County, dated January 10, 1984, modified, on the law, by deleting (1) the second decretal paragraph, and (2) so much of the third and fourth decretal paragraphs as limits injunctive relief "to any future taxation which is neither the subject of the municipal budget of the County of Westchester or [*sic*] the cities of Yonkers, Mt. Vernon, and New Rochelle enacted by such municipality prior to the date of entry of [the] judgment [and order]". As so modified, judgment and order affirmed insofar as appealed from.

The plaintiffs in both actions are awarded one bill of costs against the defendants in said actions appearing jointly and filing separate briefs.